IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
Case No.: 0:19-CV-62949

FRANCISCO JAVIER PEREZ RAMONES,

      Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, LLC,
TRANS UNION, LLC, and
AR RESOURCES, INC.

      Defendants.

_____/

**AR Resources, Inc.'s Response to Plaintiff's Motion for Summary Judgment**

GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619


*Attorneys for Defendant*
*AR Resources, Inc.*

## TABLE OF CONTENTS

I.  Introduction……………………………………………………………………1

II.  Legal Standard……………………………………………………………...1

III.  Argument……………………………………………………………………...2

    1.  Perez cannot amend his Complaint at the summary judgment state………………2

    2.  As Perez made no dispute(s) with TransUnion in September 2019, and ARR received no notice of dispute(s) from Trans Union concerning a September 2019 dispute, ARR is entitled to Summary Judgment on Perez's FCRA claims………………………………………………………………….......................5

    3.  Perez isn't entitled to summary judgment concerning his September 2019 Experian dispute(s) as ARR performed a reasonable investigation into his dispute(s)………………………………..…………………………………………7

    4.  Perez failed to prove there are facts or evidence that ARR could have uncovered in its records that would have established its reporting to be inaccurate ………..16

  A.  Conclusion………………………………………………………………………...20

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alston v. United Collections Bureau, Inc.*,
   No. CIV.A. DKC 13-0913, 2014 WL 859013 (D. Md. Mar. 4, 2014)................18

*Anderson v. EMC Mortg. Corp.*,
   631 F.3d 905 (8th Cir. 2011).................................................................5

*Arianas v. LVNV Funding LLC*,
   132 F. Supp. 3d 1322 (M.D. Fla. 2015) ...................................... passim

*Aubert v. Russell Collection Agency, Inc.*,
   215 F. Supp. 3d 583 (E.D. Mich. 2016) ...........................................18

*Bauer v. Target Corp.*,
   Case No. 8:12-cv-00978-AEP, 2013 WL 12155951 (M.D. Fla. June 19, 2013) .18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) ....................4

*Berene v. Nationstar Mortg., LLC*,

800 F. App'x 756, 760 (11th Cir. 2020) ...............................................................4
*Boggio v. USAA Federal Sav. Bank,*
   696 F.3d 611 (6th Cir.2012)......................................................................16
*Cahlin v. Gen. Motors Acceptance Corp.,*
   936 F.2d 1151 (11th Cir.1991)...........................................................5, 10, 16
*Celestine v. JP Morgan Chase Bank, N.A.,*
   No. 1:17-CV-20915-KMM, 2018 WL 2316665 (S.D. Fla. May 11, 2018) .........14
*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ..................................................................................1
*Chiang v. Verizon New England, Inc.,*
   595 F.3d 26 (1st Cir.2010) ................................................................10, 16
*Davis v. Coca-Cola Bottling Co. Consol.,*
   516 F.3d 955, 974 (11th Cir. 2008) ...............................................................4
*Deutsch v. Arrow Fin. Servs., LLC,*
   No. 8:08-CV-1469-T-17MAP, 2010 WL 10878520 (M.D. Fla. Mar. 30, 2010) .16
*Felts v. Wells Fargo Bank, N.A.,*
   893 F.3d 1305 (11th Cir. 2018).........................................................10, 16, 17
*Ferrer v. Bayview Loan Servicing, LLC,*
   No. 15-20877-CIV, 2018 WL 582584, at *4 (S.D. Fla. Jan. 26, 2018) ...............4
*Gilmour v. Gates, McDonald & Co.,*
   382 F.3d 1312, 1315 (11th Cir. 2004) .......................................................passim
*Gorman v. Wolpoff & Abramson, LLP,*
   584 F.3d 1147 (9th Cir.2009)....................................................................passim
*Guimond v. Trans Union,*
   45 F.3d 1329 (9th Cir. 1995)......................................................................10
*Harrison v. Benchmark Electronics Huntsville, Inc.,*
   593 F.3d 1206, 1214 (11th Cir. 2010) ............................................................4
*Hinkle v. Midland Credit Mgmt., Inc.,*
   827 F.3d 1295 (11th Cir. 2016)..............................................................10, 14
*Howard v. Pinnacle Credit Servs., LLC,*
   No. 4:09–CV–85 (CDL), 2010 WL 2600753 (M.D.Ga. June 24, 2010) .............13
*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n,*
   No. 17-CV-62094-BB, 2018 WL 1183357 (S.D. Fla. Feb. 26, 2018) .............4, 14
*Id.,*
   534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)…………………………..2
*Id.,*
   749 F. App'x 897 (11th Cir. 2018) ..............................................................18
*Id.,*
   770 F. App'x 452 (11th Cir. 2019) ..............................................................15
*Johnson v. MBNA America Bank, NA,*
   357 F.3d 426 (4th Cir.2004).............................................................5, 10, 16
*Hurlbert v. St. Mary's Health Care Sys., Inc.,*
   439 F.3d 1286, 1297 (11th Cir. 2006) ............................................................4
*Mais v. Gulf Coast Collection Bureau, Inc.,*
   No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *3 (S.D. Fla. Mar. 27, 2013)
   ........................................................................................................4

*Miller v. Mortg.*, No. 611CV1337ORL22DAB,
   2013 WL 12091325 (M.D. Fla. Apr. 10, 2013) ...................................................5

*Oulia v. Fla. Dep't of Transportation*,
   No. 18-25110-CIV, 2020 WL 2084998, at *4 (S.D. Fla. Apr. 30, 2020) ............5

*Peasley v. Verizon Wireless (VAW) LLC,*
   364 F.Supp.2d 1198 (S.D.Cal.2005) ...................................................................5

*Rambarran v. Bank of Am., N.A.,*
   609 F. Supp. 2d 1253 (S.D. Fla. 2009) ................................................................5

*Smith v. Specialized Loan Servicing, LLC,*
   No. 117CV02940LMMRGV, 2018 WL 4856039 (N.D. Ga. July 19, 2018) .......18

*Stafford v. Cross Country Bank,*
   262 F.Supp.2d 776 (W.D.Ky.2003) .....................................................................5

*Steffenson v. Scana Energy Mktg., Inc.,*
   No. 1:07-CV-01946-GET, 2009 WL 10712181 (N.D. Ga. Jan. 14, 2009) ..........18

*Stroud v. Bank of Am.,*
   886 F. Supp. 2d 1308 (S.D. Fla. 2012) ....................................................... passim

*Taylor v. Georgia Power Co.,*
   697 F. App'x 630 (11th Cir. 2017) ....................................................................14

*Westra,*
   409 F.3d ....................................................................................10, 13, 16, 18

Statutes

15 U.S.C. § 1681s–2(b) ............................................................................... passim
15 U.S.C.A. § 1681i ...........................................................................................10, 12
§ 1681s-2(b)(2) ..................................................................................................8

Rules

Fed. R. Civ. P. 56 ...............................................................................................2
Fed. R. Civ. P. 56(e)(2) .......................................................................................2
Rule 56(c)(1)(B) ..................................................................................................2

## I. Introduction

Perez's Complaint articulates only one timepoint—September 2019—in which he disputed ARR's credit reporting. Potentially seeing the waves crashing down on his FCRA claims, Perez endeavors to muddle the waters by expostulating new claims never excogitated in his operative Complaint. The dilemma for Perez is that he didn't initiate any dispute with TransUnion in September 2019 that would trigger an investigation for ARR. And his September, or say October 2019, Experian dispute(s) fare no better, as based on the dispute(s) made—not mine; belongs to an individual with a same or similar name—ARR conducted a reasonable investigation and found—since the social security number Perez provided in his disputes matched that in its records—that the accounts most likely belonged to him.

## II. Legal Standard

A court may only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law."[2]

An issue is genuine if a reasonable trier of fact could return judgment for the non-moving party.[3] A fact is material if it might affect the outcome of the suit under the governing law. *Id.* "The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving

---

[1] Fed. R. Civ. P. 56(a).
[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v.* Catrett, 477 U.S. 317, 322 (1986).
[3] *Ali v. Dist. Dir., U.S. Citizenship & Immigration Servs.*, 209 F. Supp. 3d 1268, 1271 (S.D. Fla. 2016) (Bloom, J.).

party."[4] When determining if a non-moving party has met its burden, the court must stop short of weighing the evidence and/or making a determination regarding the credibility of the truth of the matter.[5] The Court must view all evidence and draw all justifiable inferences in favor of the nonmoving party.[6] Even where the facts are undisputed, if reasonable minds could differ on the inferences arising from them, summary judgment should be denied.[7]

### III. Legal Argument.

1. **Perez cannot amend his Complaint at the summary judgment phase.**

In *Swierkiewicz v. Sorema N.A.,* the Supreme Court mandated a liberal pleading standard under Federal Rule of Civil Procedure 8(a).[8] This standard however doesn't afford Perez an opportunity to raise new claims at the summary judgment stage.[9] At the summary judgment stage, the proper procedure for a plaintiff, like Perez, to assert a new claim is to amend his complaint.[10] He didn't; rather he forged forward with head buried in the sand, throwing rules of procedure to the wind.

Perez filed his Complaint specifically alleging:

- that derogatory information was being reported by ARR concerning him.[11]
- that he didn't incur the debt and that it was incurred by his father.[12]
- that in September 2019, he disputed the alleged inaccurate information with Experian and TransUnion.[13]
- that within 5 days of said dispute, Experian and TransUnion notified ARR of the disputes and the nature of the disputes and ARR received that dispute(s).[14]

---

[4] *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).
[5] *Moore v. Geico Gen. Ins. Co.*, 633 Fed. Appx. 924, 930 (11th Cir. 2016).
[6] *Id.*
[7] *Allen*, 121 F.3d at 646.
[8] *Id.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)
[9] *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)
[10] *Id.*
[11] *See,* Doc. 1 at ¶¶ 16 & 39.
[12] *Id.* at ¶ 18.
[13] *Id.* at ¶¶ 22 & 44.
[14] *Id.* at ¶¶ 24-25 & 46-47.

- that Experian and TransUnion received the results of the investigation, and updated the reporting solely based upon the information it received from ARR.[15]
- that ARR violated the FCRA by failing to undertake a proper investigation upon receive of notice of the disputes Perez made via Experian and TransUnion.[16]

Shockingly absent from Perez's Motion for Summary Judgment ("Motion") is any specific mention of his September 2019 dispute.[17] Potentially realizing the futile nature of his September 2019 claims, Perez expands and modifies the operative allegations to include new ones never proffered before. For instance, Perez asserts that "[s]tarting in *June 2018*, [he] submitted the first of thirty-one (31) individual disputes to ARR via TransUnion and Experian."[18] He further claims that in *June 2018*, he "noticed that ARR was reporting 19 collection accounts to TransUnion and Experian," that he submitted the first of his disputes to TransUnion, and that "[t]hese initial disputes were handled by Nieves Macrone."[19] Similarly he discusses the types of dispute(s) he made in *June 2018*[20] and in *August 2018*,[21] and argues their applicability to his Summary Judgment Motion. Perez even begins the "argument" section of his Motion arguing "[a]fter receiving each of Mr. Ramones' *myriad* disputes … to Trans Union and Experian, AR Resources, … was obligated to conduct a reasonable investigation.[22]

Stated simply—throughout the Motion, he mingles in new disputes, which never appeared in his operative Complaint. And without a doubt, this is improper.

---

[15] *Id.* at ¶¶ 26-27 & 48-49.
[16] *Id.* at ¶¶ 59-60.
[17] Counsel ran a word search on Perez's Motion, and found zero instances of the word(s) "September" or "September 2019" concerning dates of Perez's disputes.
[18] *See,* Doc. 59 at pg. 1.
[19] *Id.* at pg. 4.
[20] *Id.* at pg. 5. i.e. "I have no idea what was this (sic) expenses coming from I haven't been sick in my life Times"
[21] *Id.* at pg 7.
[22] *Id.* at pg. 9.

To be certain, ARR was entitled to receive—via Perez's Complaint—"fair notice of what the claim is and the grounds upon which it rests."[23] And on summary judgment, he cannot raise new claims and is limited to the allegations of the operative complaint, which includes only claim(s) related to his purported September 2019 dispute(s) with Experian and TransUnion.

As espoused by the Eleventh Circuit in *Gilmour v. Gates, McDonald & Co.*:

> Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."[24]

Following the *Gilmour* opinion, the Eleventh Circuit doubled down and determined that a plaintiff was not entitled to assert a new claim or fundamentally change the nature of an existing claim in the midst of summary judgment.[25]

Likewise, this court has followed the mandate espoused in *Gilmour*. In a FDCPA case, in ruling on a motion for summary judgment, it held that a plaintiff could not assert a new theory or claim that didn't appear in the complaint.[26] In another consumer protection case, this court again reiterated that generally speaking, a party cannot amend its pleadings solely through argument at the summary judgment stage.[27] And comparably in a summary judgment context, this court

---

[23] *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)); *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir.2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

[24] *Gilmour*, 382 F.3d at 1315.

[25] *Berene v. Nationstar Mortg., LLC*, 800 F. App'x 756, 760 (11th Cir. 2020) citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citation omitted). *See also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (determining that a plaintiff was not entitled to assert a new claim or fundamentally change the nature of an existing claim in the midst of summary judgment: "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with [Federal Rule of Civil Procedure] 15(a).") (citation omitted and alteration added).

[26] *Ferrer v. Bayview Loan Servicing, LLC*, No. 15-20877-CIV, 2018 WL 582584, at *4 (S.D. Fla. Jan. 26, 2018) citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).

[27] *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *3 (S.D. Fla. Mar. 27, 2013) citing *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314–15 (11th Cir.2004).

rejected a plaintiff's attempt to "[w]ithout explanation… argue[] for the first time" a new theorem not contemplated in the operative complaint.[28]

Here, ARR is entitled, on procedural grounds, summary judgment on any claim made or attempted to be made by Perez unrelated to the dispute(s) alleged in his Complaint—i.e. the September 2019 timepoint dispute(s).[29] And as such, going forward with its Response, ARR will focus only on those claims asserted in Perez's Complaint.[30]

**2. As Perez made no dispute(s) with TransUnion in September 2019, and ARR received no notice of dispute(s) from Trans Union concerning a September 2019 dispute, ARR is entitled to Summary Judgment on Perez's FCRA claims.**

It's axiomatic that liability under § 1681s-2(b) is only triggered for a furnisher of information, like ARR, wherein a consumer reporting agency ("CRA") gives the furnisher notice that a consumer has contacted the credit reporting agency to challenge the accuracy and completeness of the information.[31] Said another way—if a consumer doesn't dispute the

---

[28] *Oulia v. Fla. Dep't of Transportation*, No. 18-25110-CIV, 2020 WL 2084998, at *4 (S.D. Fla. Apr. 30, 2020), reconsideration denied, No. 18-25110-CIV, 2020 WL 2943089 (S.D. Fla. June 3, 2020)

[29] *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *3 (S.D. Fla. Mar. 27, 2013).

[30] To the extent the Court intends to consider the improperly advanced arguments and factual allegations not contained in the operative complaint, ARR would request notification of such an intent so that it can file the appropriate motions and/or seek leave to file a supplemental brief responding to such improper allegations.

[31] *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1255 (S.D. Fla. 2009); *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir.2004) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991), which interpreted an analogous statute to require "reasonable investigation" by creditors); *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011) (The duties under the FCRA of a furnisher of credit information to conduct an investigation with respect to the disputed information are triggered by notice that its information is being disputed from a credit reporting agency (CRA), not from the consumer.); *Miller v. Mortg.*, No. 611CV1337ORL22DAB, 2013 WL 12091325, at *16 (M.D. Fla. Apr. 10, 2013), adhered to on reconsideration sub nom. *Miller v. Nationstar Mortg.*, No. 611CV1337ORL22DAB, 2013 WL 12158133 (M.D. Fla. May 29, 2013), and aff'd sub nom. *Miller v. Nationalstar Mortg.*, 562 F. App'x 929 (11th Cir. 2014) (to trigger Defendant's duty to reinvestigate the accuracy and completeness of information it furnished to a consumer reporting agency, a consumer reporting agency must first give the furnisher notice that a consumer has contacted the credit reporting agency to challenge the accuracy and completeness of the information.);*Peasley v. Verizon Wireless (VAW) LLC*, 364 F.Supp.2d 1198, 1200 (S.D.Cal.2005) ("Courts have consistently held that for the duty imposed by § 1681s–2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Stafford v. Cross Country Bank*, 262 F.Supp.2d 776, 784 (W.D.Ky.2003) ("[A] furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency. Under the statutory language, notification from a consumer is not enough.").

information being disputed directly with a CRA, or if a CRA fails to notify a furnisher of information of a consumer's dispute, a furnisher has no duty to investigate and there can be no liability under the FCRA for the furnisher.[32]

Perez specifically contends that ARR reported derogatory information concerning debt he allegedly owed to the Credit Reporting Agencies ("CRAs").[33] He maintains that he didn't incur the debt(s); rather they were incurred by his father.[34] And he _exclusively_ alleges that he disputed the credit reporting with TransUnion in September 2019,[35] that within 5 days of said dispute TransUnion notified ARR of the dispute, and that ARR received notice of his dispute.[36]

Perez's conundrum however is that he never disputed ARR's credit reporting with TransUnion in September 2019, and that ARR received no dispute notice from TransUnion in September 2019 or even October 2019.[37] This is because Perez didn't dispute ARR's credit reporting during these two months with TransUnion.[38] As ARR didn't receive any "notice of dispute" from TransUnion concerning a September 2019 dispute, it's entitled to summary judgment on Perez's claims as they relate to TransUnion.

To be sure, Perez _did_ contact TransUnion in September 2019, but not to dispute ARR's credit reporting. TransUnion's own records reveal that Perez made "some type of dispute"—a mere general dispute—on September 23 2019 via telephone, but didn't actually dispute ARR's credit reporting of his Grassy Waters account(s).[39]

---

[32] _Id._
[33] _See,_ Doc. 1—the operative Complaint—at ¶¶ 16 & 39.
[34] _Id._ at ¶ 18.
[35] _Id._ at ¶ 44.
[36] _Id._ at ¶¶ 46-47.
[37] _Id._ at ¶ 24.
[38] _Id._ at ¶ 24. As will be explained below, Perez merely telephone TransUnion, lodged a general dispute, and was sent his credit report from TransUnion.
[39] _Id._ at ¶ 25; s_ee also,_ Exhibit "B" to ARR's Declaration—copy of TransUnion's first dispute record of 9/23/2019.

Upon being contacted by Perez in September 2019, TransUnion mailed him a letter enclosing a copy of his TransUnion Personal Credit Report—which he requested—and informing him to contact TransUnion if he believes something is incomplete or inaccurate.[40] And TransUnion's records show Perez made a second "dispute" via telephone the same day.[41] Similarly, TransUnion mailed a second letter to Perez detailing that it (TransUnion) understood that something didn't seem exactly right to him, and provided him another copy of his TransUnion credit report wanting to making sure his credit report seemed accurate to him.[42]

As Perez only professed a general credit dispute with TransUnion and didn't specifically dispute ARR's credit reporting concerning the Grassy Waters account(s) in September 2019, ARR never received any "notice of dispute" from TransUnion in September or even October 2019.[43] And as it never received a "notice of dispute" from TransUnion, no obligation was trigged on its part to conduct any investigation under the FCRA.[44] For this reason, Perez's FCRA claims(s)—with respect to the September 2019 TransUnion dispute(s)—fail. Thus, ARR is entitled to summary judgment.

**3. Perez isn't entitled to summary judgment concerning his September 2019 Experian dispute(s) as ARR performed a reasonable investigation into his dispute(s).[45]**

Perez, in his Motion, posits fallacies such as ARR "verified the erroneous information as accurate, despite the fact that the information it was reporting was not a match for [Perez's] identifiers," that ARR "failed to review the Consumer Message contained on the ACDV's it

---

[40] *Id.* at ¶ 26; s*ee also,* Exhibit "C" to ARR's Declaration—copy of letter TransUnion sent to Perez.
[41] *Id.* at ¶ 27; s*ee also,* Exhibit "D" to ARR's Declaration—copy of TransUnion's second dispute record of 9/23/2019.
[42] *Id.* at ¶ 28; *See,* Exhibit "E" to ARR's Declaration—copy of second letter TransUnion sent to Perez.
[43] *Id.* at ¶ 29.
[44] *Id.*
[45] The only remaining dispute(s) articulated in the Complaint, of which ARR will concern itself, is Perez's September 2019 Experian dispute(s). The dispute(s) actually occurred on October 3, 2019. *See,* Doc. 55-1 at ¶¶ 30-31 and Exhibit "F" to Doc. 55.1—copy of Plaintiff's Experian's disputes.

received," and that ARR merely engaged in data conformity. Perez's arguments consist more of wishful and artful pleading than fact, and fail to entitle Perez to summary judgment. For example, Perez's personal identifier matched more than not. Each of ARR's agents scrutinized the information that ARR maintained against the information Perez submitted to Experian via his Sept./Oct. 2019 disputes. Based upon the nature of the dispute, ARR agents compared the following information and found its reporting to be accurate:[46]

| | Perez's Information Provided to Experian | ARR's Internal Information re: Perez |
|---|---|---|
| Name | Francisco Javier Perez | Francisco Perez Gonzalez |
| Social Security Number | xxx-xx-78xx | xxx-xx-78xx |
| Address | 11025 SW 16th Manor Davie Florida 33324 | 1100 SW 70th Ter Plantation FL 33317 |
| Prior Address | 1100 SW 70th Ter Plantation FL 33317 | |

Perez's other contention that ARR "failed to review the Consumer Message contained on the ACDV's it received" is nothing more than artful use of deposition testimony concerning a uniquely different aspect than the one its used to support. The deposition portion cited by Perez pertains to Ms. Lesane delineating what she meant by "processing a dispute"—i.e. making sure she has the right account per the consumer's name, confirming the information as in the name, the date of birth, the social security number, the address, etc. And the deposition question Perez asked was specific and poignant—do you review the "consumer message" *when you're reviewing the e-OSCAR screen*, and the answer was no. The question wasn't—you don't ever review the "consumer message."

---

[46] *Id.* at ¶ 35.

And Perez's contention—that ARR never reviews the "consumer message"—is otherwise inaccurate as ARR does specifically review and notate the consumer's dispute and specific message. Perez's specific dispute—that the account(s) belonged to another person with a same or similar name—was reviewed and directly noted in ARR's account notes, its CRS notes, by the employees who were handling the dispute(s). For instance, on October 25, 2019, Melody Davis (MD1) specifically reviewed and manually inputted CDV REQ-BELONGS TO ANOTHER INDIVIDUAL WITH THE SAME SIMILAR NAME. -CONFIRM ID.[47] Likewise, on the same day, Lisa Lesane (LL1) reviewed and noted ARR's account notes as to Perez's specific dispute contained in the "consumer message" noting: "CDV RE-BELONGS TO ANOTHER INDIVIDUAL WITH THE SAME SIMILAR NAME.  -CONFIRM ID."[48]

Turning back to the actual disputes in his Complaint—the "September 2019" Experian dispute(s)— Perez's particular quarrel was that the account(s) were—not his/hers—and more specifically—"[b]elongs to another individual with same/similar name. Provide Complete ID."[49] Thus, the only question for this court to answer is whether ARR performed a reasonable investigation into these particular dispute(s).

To prevail on a claim under § 1681s-2(b) wherein it's alleged that a furnisher of information—like ARR here—undertook an unreasonable investigation, a plaintiff must prove that the investigation itself was unreasonable *and* "must *also* demonstrate that the result of the investigation was actually inaccurate."[50] While the FCRA does not specify the nature and extent of the "investigation" a furnisher of information must conduct under § 1681s-2(b), the Eleventh Circuit has opined that "the structure of the statute, however, suggests that the duty of a furnisher

---

[47] *See,* Docs 55-1 at Exhibit "A" at pg 9.
[48] *Id.*
[49] *Id.* at ¶ 31.
[50] *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012).

under § 1681s-2(b) is a component of the larger reinvestigation duty imposed by § 1681i(a) on CRAs themselves"[51] and that "§ 1681i(a) imposes "a duty ... to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer."[52] And it has determined "that 'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s–2(b)."[53]

The Eleventh Circuit articulated what constitutes a "reasonable investigation" differs contingent on the situations of each case and whether the investigation is being conducted by a CRA or a furnisher of information—like ARR.[54] And whether a furnisher's investigation, like ARR's, is reasonable will be dependent further on (1) the status of the furnisher—i.e. an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and (2) on the quality of documentation available to the furnisher.[55]

To be sure, §1681s-2(b) does not require the furnisher to conduct a perfect, error-free investigation in responding to a dispute.[56] A reasonable investigation is "procedural," and "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."[57]

And as to the investigation itself, §1681s–2(b) does not impose an *unduly* burdensome requirement on furnishers.[58] Rather, it presents a choice regarding how to handle disputed

---

[51] *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301–02 (11th Cir. 2016). § 1681s-2(b)(2) (requiring furnishers to complete their investigation and report its results "before the expiration of the period ... within which the [CRA] is required to" resolve the dispute).

[52] *Id.* citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

[53] *Id.* citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Westra*, 409 F.3d at 827; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

[54] *Id.* citing *Chiang*, 595 F.3d at 38 ("[W]hat is a reasonable investigation by a furnisher may vary depending on the circumstances."); *Gorman*, 584 F.3d at 1160 ("[T]he reasonableness of an investigation depends on the facts of the particular case ...."); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018). (same).

[55] *Id.*

[56] *See Guimond v. Trans Union* 45 F.3d 1329, 1333 (9th Cir. 1995).

[57] *Arianas,* 132 F. Supp. 3d 1322, 1327 citing *Gorman,* 584 F.3d at 1161. (emphasis added).

[58] *Hinkle*, 827 F.3d 1295, 1301–02.

information. The first option is to satisfy § 1681s–2(b) by conducting an investigation, verifying the disputed information, and reporting to the CRAs that the information has been verified.[59] Verification might be accomplished by uncovering documentary evidence that is sufficient to prove that the information is true.[60] The second way is to conduct an investigation and conclude, based on that investigation, that the disputed information is unverifiable.[61]

Here, Perez disputed ARR's credit reporting of the Grassy Waters accounts with Experian in October 2019—not in September 2019 as alleged.[62] He contended the accounts weren't his and that they "belonged to another individual with the same and similar name" and requested to "Confirm ID."[63] Based upon the nature of his dispute(s), ARR undertook an investigation into each account and dispute. And it determined it was able to uncover documentary evidence that was sufficient to verify the accuracy of its reporting as the accounts appeared to belong to Perez, and not to some person with a same or similar name as the name. This was because the name, address (prior address) and social security number that Perez provided to Experian when lodging his disputes matched, or nearly matched the information that the original creditor supplied the accounts and Perez's information.[64]

The pivotal piece of information that was determinative for ARR to be able to verify its reporting as accurate was that Perez's social security number given to Experian as part of his dispute exactly matched the social security number ARR had in its file(s).[65] As Perez disputed the accounts as not his—more specifically as belonging to another person with the same or

---

[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *See,* Doc. 55-1 at ¶¶ 28-29 and Exhibit F to Doc. 55-1.
[63] *See,* Doc. 55-1; *see also* Exhibit "A" to Doc. 55-1—ARRs account notes; *see also* Exhibit F to Doc. 55-1—ACDV's provided by Experian.
[64] *Id.* at ¶¶ 32-36.
[65] *Id.* at ¶ 37.

similar name—and the social security numbers matched, ARR reasonably concluded that the

account(s) belonged to Perez and not to someone with a same or similar name.[66] As evidenced

here, based upon the nature of the dispute(s), ARR's investigation(s) were reasonable.

In *Stroud v. Bank of America*, this court faced a situation, similar to the one present here,

concerning whether a furnisher of information—like ARR—undertook a reasonable

investigation upon receipt of a dispute claiming the account(s) were "[n]ot his/hers..[p]rovide or

confirm ID."[67] Magistrate Goodman opined, to avoid summary judgment, a plaintiff—like

Perez—must show there is a genuine issue of material fact evidencing that a furnisher:

> (1) failed to conduct an investigation with respect to the disputed
> information;
> (2) failed to review all relevant information provided by the
> consumer reporting agency pursuant to § 1681i(a)(2) of the FCRA;
> (3) failed to report the results of the investigation to the consumer
> reporting agency; or,
> (4) if an item of information disputed by a consumer is found to be
> inaccurate, incomplete, or cannot be verified after any
> reinvestigation, failed to modify, delete, or permanently block the
> reporting of that item of information.[68]

In *Stroud,* the defendant, the original creditor of the account, submitted a declaration

stating for the majority of the disputes—similar to one(s) here (not his/hers… confirm ID")—

stating it investigated whether the account was plaintiff's by confirming that the personal

information for the account that plaintiff listed in the disputes matched the information in its

records for the account.[69] As the original creditor, the defendant also reviewed other documents

such as its billing statements and confirmed the address on the billing statements matched the

---

[66] *Id.* at ¶ 38.
[67] *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313 (S.D. Fla. 2012).
[68] *Id.*
[69] *Id.*

address Stroud listed on the dispute.[70] Ultimately this court granted defendant summary

judgment delineating that:

> Considered in **isolation**, BOA's submissions demonstrate that its
> response to Stroud's various disputes constituted
> a reasonable investigation under the FCRA, that this investigation
> yielded no indication that the account did not belong to Stroud, and
> that BOA accurately reported its findings.[71]

To be sure, a furnisher of information—like ARR—is entitled to summary judgment if it

conducts a reasonable investigation based upon the information it has in its file regarding the

dispute provided by the CRA(s), concludes that there is no evidence its information is inaccurate,

and accurately reports its findings to the credit reporting agencies.[72] In *Arianas v. LVNV Funding*

*LLC,* a sister court faced an akin FCRA lawsuit, as in here and in *Stroud*, and granted summary

judgment in the defendant's favor where the plaintiff filed disputes with CRAs indicating—

"Consumer states inaccurate information. Provide or confirm complete ID and account

information"—and where the defendant verified the relevant dates, account information, and

timely responded to the CRAs.[73] The plaintiff argued that he had already paid off the debt and

the defendant failed to verify the accuracy of *its records* and lacked sufficient information to

report to the credit reporting agencies.[74] The Court disagreed opining the defendant **relied on the**

**information that the originator had transferred electronically to it**.[75] And plaintiff's

---

[70] *Id.*
[71] *Id.,* citing to *e.g., Howard v. Pinnacle Credit Servs., LLC,* No. 4:09–CV–85 (CDL), 2010 WL 2600753, at *2–3 (M.D.Ga. June 24, 2010) (analyzing similar disputes received from a credit agency, describing a similar response, and granting summary judgment to furnisher of information on § 1681s–2(b) claim). (emphasis added).
[72] *Id.* citing *Westra v. Credit Control of Pinellas,* 409 F.3d 825 (7th Cir.2005).
[73] *Id.*, 132 F. Supp. 3d 1322, 1323 (M.D. Fla. 2015).
[74] *Id.* (emphasis added.)
[75] *Id.* ("Arianas is unable to muster any evidence that the electronic information in the records was **unreliable**.") (emphasis added.)

unsupported assertion that he paid the debt, without documentary support, did not cast doubt on

defendant's reasonableness in relying on and reporting the information in its electronic records.[76]

In *Taylor v. Georgia Power Company,* the Eleventh Circuit upheld the grant of summary

judgment on behalf of a furnisher of information applying the principle it expounded in *Hinkle*.[77]

The Court *Taylor* determined that the district court didn't err in concluding that the defendant

conducted a reasonable investigation upon receipt of a dispute wherein the undisputed facts

showed that the furnisher "reviewed all the information it had in its possession … [and] verified

[the plaintiff's] name, birth date, social security number, and the amount owed on the account,

before verifying the debt.[78]

Following the reasoning dissertated by the Eleventh Circuit in *Taylor,* this court granted

summary judgment for a furnisher who completed a reasonable investigation where it, upon

receipt of a dispute claiming an account was not his/hers, investigated the disputed by checking

the plaintiff's personal identifying information, the loan number and data points, confirmed their

accuracy, and verified as accurate its credit reporting.[79] This court found the furnisher's

investigation to be reasonable as, following each dispute, the defendant "confirmed [p]laintiff's

name, social security number, date of birth, address, account number…"[80]

As the Eleventh Circuit in *Hunt v. JPMorgan Chase Bank* so eloquently put it:

> When a furnisher ends its investigation by reporting that the
> disputed information has been verified as accurate, the question of
> whether the furnisher behaved reasonably will turn on whether the
> furnisher acquired sufficient evidence to support the conclusion

---

[76] *Id.*
[77] *Taylor v. Georgia Power Co.*, 697 F. App'x 630, 631 (11th Cir. 2017)
[78] *Id.*
[79] *Celestine v. JP Morgan Chase Bank, N.A.*, No. 1:17-CV-20915-KMM, 2018 WL 2316665, at *2 (S.D. Fla. May 11, 2018), underline appeal dismissed sub nom. *Celestine v. JPMorgan Chase Bank, N.A.*, No. 18-12384-EE, 2018 WL 6524368 (11th Cir. Sept. 25, 2018)
[80] *Id.*

that the information was true.[81]

Here, as in most FCRA § 1692s2-b cases, the question is did ARR acquire enough evidence to support its conclusion the information it report was true/accurate? The resounding answer to that question can only be yes.

As delineated more fully in its declaration, in October 2019 Perez disputed his accounts with Experian indicating they were not his and more specifically contested they belonged to someone with a similar name.[82] Perez never disputed the debts with ARR directly.[83]  He didn't claim fraud. He didn't claim identify theft. He provided no substance to support his threadbare dispute. Upon receipt his dispute, ARR reviewed each dispute on each account.[84] It cross-referenced the information that Perez provided via his dispute to the information it obtained via its electronic transfer of information from the original creditor.[85] It matched his name, it matched his address (or at least his prior to address to the address listed in ARR's system), and most importantly matched his social security numbered.[86] This investigation was reasonable. And it was further reasonable for ARR to verify the information that it reported as accurate.

When ARR ended its investigation by reporting that the disputed information had been verified as accurate, the question of whether it behaved reasonably turns on whether it acquired sufficient evidence to support the conclusion that the information was true. As championed by the case law cited above, ARR relied on the information that the originator had transferred electronically to it. Perez shows no reason why ARR shouldn't have relied on it. It reviewed all the information it had in its possession, and verified Perez's name, address, social security

---

[81] *Id.*, 770 F. App'x 452, 457 (11th Cir. 2019).
[82] *See,* Exhibit "1"—Declaration of ARR—at ¶¶30-31.
[83] *Id.* at ¶ 12.
[84] *Id.* at ¶¶32-33.
[85] *Id.* at ¶¶34-38.
[86] *Id.* at ¶¶34-38.

number, and the amount owed on the account, before verifying the debt. Perez therefore isn't entitled to summary judgment, but rather ARR is.[87]

4.   **Perez failed to prove there are facts or evidence that ARR could have uncovered in its records that would have established its reporting to be inaccurate.**

Regardless of the investigation undertaken by ARR, it was Perez's obligation to demonstrate that that *had* ARR conducted a reasonable investigation, the result would have been different. To be sure, Perez must identify some facts ARR could have uncovered that established that the reported information was, in fact, inaccurate or incomplete.[88] He didn't, and he can't.

When ARR receives notice of a customer's dispute from a credit reporting agency, it's required to conduct a reasonable investigation of its ***records*** to determine whether the disputed information can be verified.[89] And the requirement of a reasonable investigation is "procedural," and "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."[90]

And as acknowledge by the Eleventh Circuit in *Felts v. Wells Fargo Bank, N.A.,* regardless of the nature of the investigation, a plaintiff must prove that *had* the furnisher

---

[87] *Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1313 (S.D. Fla. 2012) (A furnisher of information is entitled to summary judgment if it conducts a reasonable investigation based upon the information regarding the dispute provided by the credit reporting agency, concludes that there is no evidence its information is inaccurate, and accurately reports its findings to the credit reporting agencies.); *Deutsch v. Arrow Fin. Servs., LLC*, No. 8:08-CV-1469-T-17MAP, 2010 WL 10878520, at *8 (M.D. Fla. Mar. 30, 2010) (The reasonableness of the furnisher's investigation is measured by its response to specific information provided by the CRA in the notice of dispute. Where the CDV provides "scant information," without any detail as to the disputed transaction(s), and with no assertion of fraud or identity theft, … a furnisher's review of its internal files is reasonable.); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1158 (9th Cir. 2009) (MBNA's review of its internal account files to determine whether any such agreement had been reached was all that was required to respond reasonably to this notice of dispute.); *Westra*, 409 F.3d at 827 (holding a reasonable investigation may require a more thorough investigation when the creditor was on notice of possible fraud or identity theft than when the creditor receives little information other than the debtor denies the account belongs to him).

[88] *Id.* (emphasis in original.)

[89] *Johnson v. MBNA America Bank, NA,* 357 F.3d 426, 431 (4th Cir.2004) (citing *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1160 (11th Cir.1991), which interpreted an analogous statute to require "reasonable investigation" by creditors); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1155 (9th Cir.2009) (adopting Fourth Circuit's holding in *Johnson); Chiang v. Verizon New England, Inc.,* 595 F.3d 26, 37 (1st Cir.2010) (same); *Boggio v. USAA Federal Sav. Bank,* 696 F.3d 611, 616 (6th Cir.2012). (emphasis added.)

[90] *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326–27 (M.D. Fla. 2015).

conducted a reasonable investigation, the result would have been different.[91] In reaching this

conclusion, the *Felts* Court specifically opined:

> *Regardless* of the nature of the investigation a furnisher conducted, a
> plaintiff asserting a claim against a furnisher for failure to conduct a
> reasonable investigation cannot prevail on the claim without
> demonstrating that *had* the furnisher conducted a reasonable
> investigation, the result would have been different; *i.e.*, that the
> furnisher would have discovered that the information it reported was
> inaccurate or incomplete, triggering the furnisher's obligation to
> correct the information. Absent that showing, a plaintiff's claim against
> a furnisher necessarily fails, as the plaintiff would be unable to
> demonstrate any injury from the allegedly deficient investigation. And,
> in turn, a plaintiff cannot demonstrate that a reasonable investigation
> would have resulted in the furnisher concluding that the information
> was inaccurate or incomplete without identifying some facts the
> furnisher could have uncovered that establish that the reported
> information was, in fact, inaccurate or incomplete.[92]

The *Felts* Court opined that a plaintiff cannot prevail on his or her claim without

identifying some fact *in the record* establishing that the information reported, regarding his or

her account, was inaccurate or incomplete.[93] Here, there's no facts or record evidence that Perez

can point to, contained in ARR's documentation or elsewhere, that would have revealed to ARR

that Perez didn't owe the debt he disputed, let alone that belonged to a person with a same or

similar name. All he has is the hackneyed assertion the accounts aren't his, and that they belong

to his father. He can't, though, rely on the claim—that the accounts belonged to his father—as

record evidence as it's not record evidence, and wasn't even the nature of dispute. His exact

dispute was "not his" and "that it belonged to someone with the same or similar name."

To be sure, a FCRA plaintiff must demonstrate some facts the furnisher could have

uncovered that would establish that the reported information was, in fact, inaccurate or

---

[91] *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305 (11th Cir. 2018). (emphasis in original.)
[92] *Id.* (emphasis in original.)
[93] *Id.*

incomplete. This holding was advocated by the Eleventh Circuit in *Leones v. Rushmore Loan Mgmt. Servs. LLC*.[94] There the plaintiff's allegation that defendant's investigation of was unreasonable didn't establish a viable claim as the plaintiff failed to "identify facts defendant could have uncovered" that would have revealed "an inaccuracy in the reported information."[95]

Perez's main argument seems to be that that ARR should have or could have contacted him or the original creditor directly when investigating his dispute(s). But when investigation a claim—that the account belongs to another person with a same or similar name—what is better than matching social security numbers. Irrespective, a furnisher is *not* automatically required to contact every consumer or even the original creditor when it receives a dispute(s) as such would be terribly inefficient and is not mandated by the FCRA.[96]

The question left is what was contained in the electronic transfer of information received by ARR that would reveal to ARR that its credit reporting was inaccurate. The answer is Perez has pointed to nothing. And there's nothing. As detailed by ARR's Declaration and its

---

[94] *Id.*, 749 F. App'x 897, 901 (11th Cir. 2018).

[95] *Id.*

[96] *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1327 (M.D. Fla. 2015); *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir.2005) ("requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA. As such, the fact that [the furnisher] did not contact [the plaintiff] does not make their investigation unreasonable."); *Steffenson v. Scana Energy Mktg., Inc.*, No. 1:07-CV-01946-GET, 2009 WL 10712181, at *2 (N.D. Ga. Jan. 14, 2009) (requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA. As such, the fact that [the furnisher] did not contact [the consumer] does not make their investigation unreasonable.); *Bauer v. Target Corp.,* Case No. 8:12-cv-00978-AEP, 2013 WL 12155951, at *5 (M.D. Fla. June 19, 2013) (citation omitted) ("A furnisher is not required to contact the consumer directly as part of its investigation under the FCRA."). *Smith v. Specialized Loan Servicing, LLC*, No. 117CV02940LMMRGV, 2018 WL 4856039, at *9 (N.D. Ga. July 19, 2018), <u>report and recommendation adopted,</u> No. 1:17-CV-2940-LMM-RGV, 2018 WL 4850229 (N.D. Ga. Sept. 17, 2018) (§ 1681s-2(b) does not require a furnisher of credit information such as SLS to contact the consumer directly or to validate the account, but only to conduct a reasonable investigation of the dispute and report those findings to the CRAs.) *Westra,* 409 F.3d at 827 (FCRA does not mandate the creditor automatically contact the creditor in every investigation); *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *9 (D. Md. Mar. 4, 2014) (The FCRA does not impose upon furnishers a duty to contact creditors for verification every time a consumer reporting agency forwards a dispute.); *Aubert v. Russell Collection Agency, Inc.*, 215 F. Supp. 3d 583 (E.D. Mich. 2016) (Verification by a furnisher of consumer credit information was not required to satisfy furnisher's duty to conduct reasonable investigation as to the accuracy of the information under the Fair Credit Reporting Act (FCRA)).

corresponding account notes, the only information it had, and could have reviewed, demonstrated that the account(s) were Perez's and at the very least didn't belong to a person with the same or similar name.[97] And potentially more importantly, Perez can't produce any evidence or identify facts ARR could have uncovered from its electronic file that would have revealed an inaccuracy in its reported information.

And as detailed above, just because the results of an investigation undertaken by a furnisher, like ARR, turns out incorrect or adverse to the consumer, doesn't in and of itself mean that the investigation was unreasonable. Here, just as in *Arianas,* Perez has no evidence the information that the originator creditor transferred to ARR electronically was unreliable.[98] And his mere assertion that he didn't owe the debt or the debt wasn't his doesn't cast doubt on ARR's reasonableness in relying on and reporting the information in the electronic records.[99]

Perez's September 2019 Experian claims fail as he's can't demonstrate any injury from the allegedly deficient investigation, and cannot demonstrate that a reasonable investigation would have resulted in ARR concluding differently than it did. Perez identifies nothing that demonstrates, let alone suggests, ARR's information was inaccurate or incomplete. Perez's claim fail, and ARR is entitled to summary judgment on Perez's claims.

---

[97] *See,* Exhibit "1" and Exhibit "A" to its declaration.

[98] *Arianas*, 132 F. Supp. 3d 1322, 1328.Arianas is unable to muster any evidence that the electronic information in the records was unreliable.

[99] *See Stroud v. Bank of Am.,* 886 F.Supp.2d 1308, 1314 (S.D.Fla.2012) (granting summary judgment on FCRA claim against furnisher because "[plaintiff] has failed to provide any *evidence,* as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that [the furnisher] reported any inaccurate information.")

### IV.    Conclusion

The court mustn't get lost in the field of booby-traps that Perez set. Erroneously Perez posits new allegations never asserted in his operative Complaint at the summary judgment stage. But this court won't be fooled by such gamesmanship and will be able to decipher the motivation for such moves—Perez's claims otherwise lack substance.

His Complaint registers one timepoint—September 2019—he allegedly asserted disputes with TransUnion and Experian. But it has come to light that he only made some superficial dispute in September 2019 with TransUnion necessitating no investigation to be undertaken by ARR. And his September, nay October, 2019 Experian dispute doesn't say what he necessarily argues in his Motion. Why? Because his "September" 2019 Experian dispute—that the accounts weren't his as they belonged to a person with a similar name—are easily dismissed. Any assessment of the information provided by Perez via his dispute to Experian compared to the information contained in ARR's electronic file would lead any reasonable person to conclude, more likely than, when a social security number matches, you have the right person.

And furthermore, without even evaluating the former arguments, Perez failed to delineate any facts or evidence that ARR could have uncovered in its records that would have established its reporting to be inaccurate. Simply stated, Perez isn't entitled to summary judgment.

Respectfully Submitted,

/s/ Charles J. McHale
CHARLES J. MCHALE, ESQ.
Florida Bar No.: 0026555
DALE T. GOLDEN, ESQ.
Florida Bar No.: 0094080
**GOLDEN SCAZ GAGAIN, PLLC**
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone: (813) 251-5500
Fax: (813) 251-3675
dgolden@gsgfirm.com
cmchale@gsgfirm.com
Counsel for Defendant