United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Francisco Javier Perez Ramones, Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 19-62949-Civ-Scola |
| Experian Information Solutions, LLC and others, Defendants. | | |

## Order On Motions For Summary Judgment

This matter is before the Court upon the Plaintiff's motion for partial summary judgment (ECF No. 96) and the Defendant's motion for summary judgment (ECF No. 97). Having considered the parties' motions, the record, and the relevant legal authorities, the Court **grants** the Plaintiff's motion and **denies** the Defendant's motion.

### 1. Background

The Plaintiff, Francisco Javier Perez Ramones, alleges that the Defendant[1], AR Resources, Inc. ("ARR"), violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, for reporting debts to Credit Reporting Agencies ("CRAs") Experian and Trans Union as belonging to the Plaintiff who is 35 years old, when in fact they belonged to his 83 year old father, Francisco Perez Gonzalez.

The Defendant is a collection agency which is hired by companies to collect debts owed by third parties. (ECF Nos. 95, 103, at ¶ 16.) The Defendant has about 600 clients, receives on average 50,000 new accounts each month, and generates its only income by receiving a percentage of the debt that it recovers for its clients. (*Id.*, at ¶¶ 17-20.) Grassy Waters Inpatient Services is one of the Defendant's clients. (*Id.*, at ¶ 18; ECF Nos. 98, 101, at ¶ 3.)

As part of its debt collection efforts, ARR and its investigators utilize a system known as e-OSCAR to receive notice of and respond to the consumer credit disputes received from CRAs. (ECF Nos. 98, 101, at ¶ 20.) The disputes received through e-OSCAR include fields for the disputing consumer to include a message relating to the dispute. (ECF Nos. 95, 103, at ¶ 31.) ARR also utilizes an internal system known as CRS where it stores the information it has in its own files such as the account information it receives from its clients. (*Id.*, at ¶

---

[1] The Plaintiff settled with Defendants Trans Union (ECF No. 40) and Experian (ECF No. 45).

25.) When ARR receives a dispute through e-OSCAR, it reviews the account information it has on CRS and compares that information against the information reflected on e-OSCAR. (*Id.*, at ¶ 40.) ARR's investigators have three choices when they review a dispute—they can indicate that the information ARR has on its systems is the same, different, or unknown, when compared against the information received through e-OSCAR. (*Id.*, at ¶ 34, 36.) The Defendant does not dispute that its investigators do not review the "consumer message" field when processing a dispute. (*Id.*, at ¶ 37.) The Defendant's investigators have never contacted clients or consumers to get more information relating to disputed accounts. (*Id.*, at ¶¶ 53-60.)

On June 12, 2017, the Plaintiff's father was admitted to the Intensive Care Unit at Westside Regional Medical Center where he was treated, and later released on June 30, 2017. (*Id.*, at ¶ 4.) After his treatment, on January 1, 2018, Grassy Waters referred the accounts belonging to Francisco Perez Gonzalez, the Plaintiff's father, to ARR for collection and ARR began its collection efforts. (ECF Nos. 98, 101, at ¶¶ 3, 6.) In March 2018, the Defendant began reporting to Experian and Trans Union that the Plaintiff, Francisco J Perez, owed 19 debts to Grassy Waters, when in fact these debts belonged to his 83 year old father. (*Id.*, at ¶ 6.) After the Defendant began reporting these debts, the Plaintiff "repeatedly disputed the erroneous reporting." (*Id.* at ¶ 7.) It appears the Plaintiff disputed the reported accounts around 30 times.

On June 14, 2018, the Plaintiff first noticed that ARR was reporting 19 collections to Trans Union and Experian, and submitted the first of his disputes to Trans Union. (ECF Nos. 95, 103, at ¶ 28.) The Plaintiff's dispute noted the accounts were not his and provided his name, as well as the last four digits of his social security number. (ECF Nos. 98, 101, at ¶ 21.) The Plaintiff also included a message with his dispute, reading "I have no idea what was this expenses coming from I haven't been sick in my life times." (ECF Nos. 95, 103, at ¶ 38.) One of the Defendant's employees, Nieves Macrone, processed this dispute without reviewing the consumer message. (*Id.*, at ¶¶ 33, 37.) ARR ultimately determined, via the procedures outlined above, that the disputed accounts belonged to the Plaintiff despite his message and the mismatched names.

On August 30, 2018, another of the Defendant's investigators, Lisa Lesane, responded to four disputes submitted by the Plaintiff to Trans Union. (*Id.*, at ¶ 64.) Despite investigating four of the Plaintiff's disputes on the same day, and even though the information reflected through e-OSCAR showed the name of the disputer was Francisco J Perez and the information reflected on ARR's system showed the accounts belonged to Francisco Perez Gonzale (with this misspelling), the Defendant determined the accounts were verified. Indeed,

the Defendant's investigator noted the differences in the names when undertaking her investigation of the Plaintiff's disputes. (*Id.*, at ¶¶ 66-71). As above, the Plaintiff said these accounts were not his and provided the last four of his social security number with his dispute. (ECF Nos. 98, 101, at ¶¶ 22.) This same investigator responded to another 9 disputes the Plaintiff submitted to Experian on October 25, 2019. (ECF Nos. 95, 103, at ¶ 65.) The Defendant once again determined the disputed accounts belonged to the Plaintiff.

A third investigator, Melody Davis, investigated ten disputes submitted by the Plaintiff to Experian on October 25, 2019, and another four disputes submitted to Trans Union on November 27, 2019. (*Id.*, at ¶¶ 73-74.) As before the Plaintiff provided similar information as with his prior disputes, noting the account was not his and providing his name and social security number. (ECF Nos. 98, 101, at ¶ 24.) The Plaintiff also provided a consumer message with his November disputes which stated "this account belongs to my father who has the same first name and last name as me[.] I am Francisco Javier Perez Ramones DOB 01 25 1985 and my fathers name is Francisco Jose Perez Ramones DOB 03 06 1937." (ECF No. 94-9, at 13.)[2] The message is cut off but appears to also reference the Plaintiff's prior disputes to the CRAs. The Defendant again concluded the disputed accounts belonged to the Plaintiff, notwithstanding the consumer message.

The parties agree that the Defendant did not have a date of birth listed in its system for the disputed accounts and therefore coded the date of birth on the accounts as unknown. (ECF Nos. 95, 103, at ¶¶ 78-79.) It is undisputed that the Defendant made no attempt to investigate the date of birth associated with the disputed accounts, including by contacting Grassy Waters, the Plaintiff, or by some other means and therefore could not confirm the date of birth that it received through e-OSCAR from the CRAs. (*Id.*, at ¶¶ 80, 84.) It also does not appear the Defendant made any effort to reconcile the inconsistencies in the names appearing on the e-OSCAR reports and its system. Rather, one of the Defendant's investigators appears to have acknowledged the mismatched names, but stated she would not delete an account because of a different last name, as that is against ARR's policies. (ECF No. 103, at ¶ 85.) Finally, it is undisputed that the Defendant does not review the "consumer messages" it receives through e-OSCAR. (*Id.*, at ¶ 37.)

The parties agree that the Defendant does not know if the Plaintiff owes the debts that it was attempting to collect, that ARR followed its standard

---

[2] While the Defendant states the Plaintiff never disputed the debts as belonging to his father (ECF No. 103, at ¶¶ 1, 3) a review of the record evidence reveals that the Plaintiff did in fact submit a dispute to this effect.

procedures in investigating Plaintiff's disputes, and that ARR believes its investigations of the Plaintiff's disputes were reasonable under the FCRA. (*Id.*, at ¶¶ 93-100.) The Plaintiff claims that because of the collection accounts the Defendant reported incorrectly to Trans Union and Experian, he was denied loans from LendingClub and Wells Fargo.

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### 3. Analysis

Under the FCRA, CRAs and entities that furnish information to CRAs, such as the Defendant, are required to conduct a reasonable investigation of disputed information. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016.) When a CRA receives a dispute, the CRA must notify the furnisher of that information that the information has been disputed and the furnisher must then undertake a reasonable investigation to determine if the information is accurate or if instead it is "inaccurate or incomplete or cannot be verified." *Id.* Where the latter occurs, the furnisher must modify, delete, or permanently block the reporting, and the CRA must undertake a similar action. *Id.* Whether an investigation is reasonable "will vary depending on the circumstances of the case" as well as the "status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and on the quality of the documentation available to the furnisher." *Id.* at 1302.

To determine what constitutes a reasonable investigation, "the Eleventh Circuit analyzed the plain language of [the FCRA] requiring furnishers to either verify disputed information or inform the CRAs that the information cannot be verified." *McGhee v. Rent Recovery Solutions, LLC*, No. 1:17-cv-72-CC-JKL, 2018 WL 4850119, at *11 (N.D. Ga. July 6, 2018), *report and recommendation adopted*, 2018 WL 10809250 (N.D. Ga. Sept. 21, 2018). The Eleventh Circuit ultimately concluded that verification of disputed information requires "some degree of careful inquiry by furnishers of information" and when a "furnisher does not already possess evidence establishing that an item of disputed information is true, [the FCRA] requires the furnishers to seek out and obtain such evidence before reporting the information as 'verified'." *Id.* Under certain circumstances it will not be reasonable for a furnisher to simply look at the information contained in its own systems when undertaking an investigation under the FCRA. *Hinkle*, 827 F.3d at 1303.

The Eleventh Circuit noted that the FCRA does "not impose an unduly burdensome investigation requirement on furnishers; rather, it presents them with a choice regarding how they handle disputed information." *Id.* First, a furnisher can conduct a reasonable investigation by, among other things, uncovering documentary evidence which allows them to verify the disputed information and report to the CRA that the information is correct. *Id.* If a furnisher chooses this course of action, whether they have acted reasonably will turn on "whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Id.*

The second way a furnisher can satisfy the FCRA is to "conduct an investigation and conclude, based on that investigation, that the disputed information is unverifiable." *Id.* "Furnishers can avail themselves of this option if they determine that the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire." *Id.* The furnisher must then notify the CRA that the information cannot be verified. *Id.* The question of whether a furnisher acted reasonably undertaking this course of action will turn on whether the furnisher reasonably determined that investigation would be "fruitless or unduly burdensome." *Id.* at 1303-04.

While the issue of reasonableness is typically a factual question that will be reserved for trial, the Court finds based on the undisputed material facts in this matter, that no reasonable juror could find that the Defendant undertook a reasonable investigation of the Plaintiff's account disputes.[3] The Plaintiff submitted around 30 disputes to CRAs, which in turn were purportedly investigated by the Defendant. When the Defendant receives a dispute through e-OSCAR, it simply compares the information received through e-OSCAR with the information on its own computer system and does not review the explanatory notes that consumers like the Plaintiff may include with their disputes. Moreover, at least with respect to the Plaintiff, the Defendant failed to undertake further reasonable investigatory steps, such as confirming the Plaintiff's date of birth from the Plaintiff, its client, or through some other means.

Here, it is undisputed that each time the Defendant reviewed one of the Plaintiff's complaints the Defendant reported the debt purportedly owed by Plaintiff as verified. The Defendant classified the debts as such, notwithstanding the fact that the names displayed in e-OSCAR and the Defendant's computer system did not match, that the Defendant had no birth date information for the reported accounts in its system to match against the complaints received from the Plaintiff through e-OSCAR, and despite the explanatory notes the Defendant included with his disputes, indicating that the medical debts could not be his as he had never been sick a day in his life, and

---

[3] While not determinative to the Court's decision, the Court also notes that the Defendant does not treat previously disputed accounts differently from an account that is being disputed for the first time. (ECF Nos. 95, 103, at ¶ 39.) The Court notes that it is possible a serially disputed account, such as the Plaintiff's, may require additional investigation beyond whatever initial investigation took place in order for the subsequent investigations to be considered reasonable. Numerous disputes on an account would seem to suggest an error has been made and additional information may be needed. Here the Plaintiff disputed the reported accounts around 30 times but each time the Defendant conducted the same perfunctory search leading to the same erroneous verification of the accounts at issue. Perhaps if the Defendant tracked accounts that were repeatedly disputed, such as the Plaintiff's, the Defendant would more expeditiously recognize incorrect information it is reporting to CRAs.

that the debts belonged to his father who has a similar name but a different birthdate than he does—the Plaintiff even included his and his father's names and birthdates with some of his disputes.

While the Plaintiff states that the Defendant has a practice of not reporting accounts as requiring amendment or deletion when the information received through e-OSCAR does not match the information on its own system, the Defendant responded that its investigator, Ms. Lesane, stated at her deposition with respect to the Plaintiff's account, that she wouldn't "delete an account just because the last name is different" because that is inconsistent with ARR's policies. (ECF No. 103, at ¶ 85.) The Court, however, finds it difficult to understand how this argument, which the Defendant highlighted, is helpful to the Defendant or how the Defendant purports it has appropriately discharged its duties under the FCRA where it admits it has 1) repeatedly reported mismatched information as verified; and 2) failed to consider all of the information submitted by consumers, such as the consumer field message, when undertaking its investigations. With respect to this second shortcoming, the Court notes that the reasonableness of an investigation can hinge on the amount of information the furnisher receives from a CRA with respect to a consumer dispute. *Hinkle*, 827 F.3d at 1295, 1306. It is not reasonable for a defendant to claim it has undertaken a reasonable investigation when it has failed to consider all of the information provided to it by a consumer.

Had any of the Defendant's investigators taken the time to look further into the disputed debts as a result of the mismatched names or the consumer message information provided by the Plaintiff, they would have discovered that these accounts were being reported in error. For instance, the Plaintiff's first dispute noted he could not owe a medical debt because he had not been sick a day in his life. This should have alerted the Defendant that there may be a problem with the account. Similarly, the Plaintiff's later disputes which provided his and his father's date of birth, their similar names, and stated the debts belonged to his father, should have prompted further investigation by the Defendant. This is even more so where the Defendant lacked information pertaining to the Plaintiff's date of birth and could have undertaken reasonable investigative measures to obtain such information by contacting its client or the Plaintiff. Rather, it appears the Defendant prioritizes speed and efficiency over accuracy with respect to its investigations. (*See* ECF No. 95, 103, at ¶¶ 44-46, 50 (noting ARR's investigators spend about one minute processing each dispute).) The FCRA's framework is designed "not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information" and the Defendant's investigative efforts failed to take heed of and advance this stated goal. *Hinkle*, 827 F.3d at 1304.

The Court also addresses the arguments advanced by the Defendant that summary judgment in its favor is appropriate. First, the Court finds unavailing the Defendant's argument that it was not required to determine whether the Plaintiff "legally owed the debts" being reported. (ECF No. 97, at 6.) The Plaintiff's thirty disputes that the debts at issue were not his is not akin to a legal challenge where a party may argue that the debts belong to him but he is not required to pay the debts owed for some legal reason. Indeed, even in *Hinkle* the Eleventh Circuit referenced the very type of dispute that was advanced by the Plaintiff, i.e. that a debt existed but it was not his and belonged to someone with a similar name. *See, e.g., Hinkle,* 827 F.3d at 1305. As the authorities cited by the Plaintiff dealt with the former and not latter type of dispute, the Court finds this argument unpersuasive.

As for the Defendant's arguments that its investigation was reasonable, for the reasons stated above, the Court finds that this argument also fails. The Defendant not only reported mismatched information as verified without undertaking reasonable investigative efforts, but also admitted to not reviewing all of the information submitted by the Plaintiff with his dispute. Had the Defendant reviewed the Plaintiff's consumer message, the Defendant would have readily discovered the incorrect reporting of the Plaintiff's father's debts on the Plaintiff's credit report. While the Defendant argues that certain of the actions advocated for by the Plaintiff, such as contacting the Plaintiff or its client are "too burdensome," certainly, the Defendant cannot argue that it is too burdensome to expect the Defendant to review *all* of the information received from a disputing consumer, including the consumer message field.

### 4. Conclusion

For the reasons stated above, the Court **grants** the Plaintiff's motion for partial summary judgment as to liability only (**ECF No. 96**) and **denies** the Defendant's cross-motion for summary judgment (**ECF No. 97**). The issue of Plaintiff's damages will be determined at trial.

**Done and ordered**, at Miami, Florida, on May 7, 2021.

Robert N. Scola, Jr.
United States District Judge