**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  19-62949-CIV-SCOLA/SEITZ**

**FRANCISCO JAVIER PEREZ RAMONES,**

     **Plaintiff,**

**vs.**

**AR RESOURCES, INC.,**

     **Defendant.**

_____/

## ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT AR RESOURCES, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR ALTERNATIVELY MOTION FOR A NEW TRIAL

This matter came before the Court on Defendant AR Resources, Inc.'s Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial [DE 159].[1] As discussed below, Defendant's request for a new trial is denied because the Court did not err in overruling Defendant's hearsay objection; and, even if that ruling was in error, that error was harmless.  Defendant's Motion for Judgment as a Matter of Law is denied to the extent the Defendant seeks to set aside the $80,000 award of actual damages because Plaintiff presented sufficient causation evidence to support the jury's actual damages award. However, to the extent that Defendant requests a reduction in the punitive damages award, that request is partially granted.  Although the punitive award was not a *per se* violation

---

[1] This case was and remains assigned to the Honorable Robert N. Scola.  The undersigned presided over the jury trial and the post-trial motions.

of due process, given the nature of the case, a partial reduction would be appropriate despite the reprehensibility of Defendant's conduct. Accordingly, the jury's puntive damages award will be reduced from $700,000 to $475,000.

I. <u>Background</u>

This Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, ("FCRA") case arises from a dispute between Plaintiff Francisco Javier Perez Ramones' ("Ramones") and Defendant AR Resources, ("ARR") regarding medical debts incorrectly reported on Plaintiff's credit reports.[2]  Beginning in June of 2017, Plaintiff's 83 year old father incurred a number of medical bills that were placed for collection with Defendant ARR, a debt collection agency.  In March of 2018, 35 year old Plaintiff Ramones discovered that ARR incorrectly reported 19 of those debts to TransUnion and Experian, two credit reporting agencies, as belonging to Plaintiff.  Beginning in June 2018, Plaintiff submitted the first of thirty-one (31) separate disputes challenging the validity of those debts.  After, based on the incorrect adverse information on his credit reports, Lending Club and Wells Fargo denied Plaintiff's credit applications, on November 27, 2019, Ramones sued Experian, TransUnion and ARR for violations of the FCRA.[3]

---

[2] There was no dispute at trial that the medical debts at issue did not belong to Plaintiff.

[3] The FCRA requires that Credit Reporting Agencies ("CRA's"), like TransUnion and Experian, and, furnishers of credit information, like Defendant ARR, conduct reasonable investigations into customer disputes.

Specifically, § 1681s-2(a) of the FCRA, mandates that furnishers of information submit accurate information to Credit Reporting Agencies ("CRA's") regarding consumers. See *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir.

At a July 1, 2020 mediation, Plaintiff resolved his claims against TransUnion and Experian [DE 39], and those Parties were dismissed from the action on August 20, 2020 [DE 40], and September 15, 2020 [DE 45], respectively.  Ramones then moved for partial summary judgment as to liability and ARR moved for summary judgment. Judge Scola granted Plaintiff's Motion for Partial Summary Judgment as to liability finding that Defendant failed to conduct a reasonable investigation into Plaintiff's FCRA disputes as required by that statute, and denied Defendant's Motion for Summary Judgment [DE 112].[4]

Thus, at trial, only Plaintiff's FCRA damage claims against ARR remained. After a four-day trial, the jury awarded Plaintiff $80,000.00 in actual damages [DE

---

2018); accord *Green v. RBS Nat. Bank*, 288 Fed. Appx. 641, 642 (11th Cir. 2008) (citing 15 U.S.C. § 1681s-2(a)).

Secondly, § 1681s-2(b), requires furnishers of information "to investigate and respond promptly to notices of customer disputes." Although consumers have no private right of action against furnishers for reporting inaccurate information to CRA's, consumers have a private right of action against furnishers for a violation of § 1681s-2(b). *Felts*, 893 F.3d at 1312 (internal citations omitted).

[4] In granting Plaintiff's Motion for Partial Summary Judgment, Judge Scola stated:

> While the issue of reasonableness is typically a factual question that will be reserved for trial, the Court finds based on the undisputed material facts in this matter, that no reasonable juror could find that the Defendant undertook a reasonable  investigation of the Plaintiff's account disputes.  The Plaintiff submitted around 30 disputes to CRAs, which in turn were purportedly investigated by the Defendant…Moreover, at least with respect to the Plaintiff, the Defendant failed to undertake further reasonable investigatory steps, such as confirming the Plaintiff's date of birth from the Plaintiff, its client, or through some other means.

[ECF 112 at 6].

146].  The jury also found that the Defendant's FCRA violation was willfull and awarded Plaintiff $700,000.00 in punitive damages.  Final judgment was entered in Plaintiff's favor [DE 149], and the instant motion followed.

II. <u>Motion for New Trial</u>

Defendant moves for a new trial contending that it suffered substantial prejudice when the Court improperly admitted hearsay evidence.  Specifically, Defendant challenges the admission of the following testimony elicited from Plaintiff on direct examination:

> Q:  When you met with your mortgage broker and you were attempting to purchase a home, did you formally submit any applications for a home loan?
>
> A: No, because at the starting point he told me that with that credit and with those 19 accounts, I wouldn't be able to at least get at the point to submit the loan, the application.

[DE 155 at 111].  At trial, Defendant objected to the testimony as hearsay.  Plaintiff responded that the statement was not being introduced for the truth of the matter asserted, but rather for the fact that the statement was made to the Plaintiff and how it made him feel.  [DE 155 at 111-12].  The Court overruled the objection. [DE 155 at 112].

In the current Motion, Defendant again contends that Plaintiff's mortgage broker's statement regarding Plaintiff's inability to obtain a mortgage loan was hearsay that should have been excluded.  Defendant's argument fails for a number of reasons.  First, the statement is not hearsay because it is not offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801 (c) (2) ("Hearsay" means a statement

4

that: …a party offers in evidence to prove the truth of the matter asserted in the statement.")  The broker's statement was introduced for purposes of assessing if, and to what extent, Plaintiff was injured by the Defendant's actions.  See, *United States v. Cruz*, 805 F.2d 1464, 1477 (11th Cir. 1986) (an out-of-court statement is not hearsay and may be offered to show the effect it has on the hearer).  It did not matter whether Plaintiff actually was ineligibile for a mortgage loan but, rather, how Plaintiff felt and what he did once that statement was made to him. Plaintiff testified that he no longer continued to seek a mortgage loan after hearing the broker's statement. He also testified about how he felt after hearing the broker make that statement and explained his subsequent actions.   Thus, the statement was offered for a reason other than the truth of the matter, and was not hearsay. See e.g., *McGhee v. Rent Recovery Sols., LLC*, Civ. Action File No. 1:17-cv-72-CC-JKL, 2018 WL 4850119, at *4, ft nt. 6 (N.D. Ga. July 6, 2018) (Larkins, M.J.) (finding that statements regarding a plaintiff's inability to rent an apartment due to a negative credit report entry were not offered for the truth of the matter asserted but for the effect they had upon Plaintiff's subsequent actions and her emotional damages).[5]

Further, it is the Defendant who now seeks to have the Court evaluate the truth of the matter asserted regarding the broker's statement.  Defendant contends that whether the broker's statement was true is key to determining the relevance of

---

[5] Also, in its closing argument, Defendant noted Plaintiff never applied for a mortgage loan. Thus, the broker's statement explains why the Plaintiff decided to not submit a mortgage loan application.

the statement, and thus its admissibility.  Defendant argues that if the broker's statement was not true, then the mortgage broker not ARR, caused Plaintiff's stress and ARR may not be held liable for Plaintiff's damages related to that statement. Defendant contends that the testimony would therefore not be relevant to determining damages caused by ARR, and would not be admissible.

Defendant's argument on this point is an attempt to run end round the liability issue Judge Scola determined at the summary judgment stage.  It is undisputed that Defendant incorrectly reported 19 deliquency accounts on Plaintiff's credit report.  That fact was conveyed to the Plaintiff by the mortgage broker.  As such, even if the broker was incorrect in his assessment that Plaintiff would not be eligible for a mortgage loan, the broker's statement was based on the Defendant's actions and was relevant to the jury's determination of Plaintiff's damages caused by those actions.

Moreover, even if the Court erred in admitting the mortgage broker's statements, "[n]ot every evidentiary error ... requires reversal." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004). The Eleventh Circuit, consistent with Fed. R. Civ. P. 61, has made clear that "a new trial is warranted only" where an error in admitting or excluding evidence "has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')." *Id.* see also Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for

granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

To determine whether a litigant was substantially prejudiced, courts consider "how much of an effect . . . the improperly admitted. . . evidence ha[d] on the verdict." *Peat*, 378 F.3d at 1162. In so doing, courts consider a number of factors, including the number of errors, the closeness of the factual disputes (*i.e.,* the strength of the evidence on the issues affected by the error), and the prejudicial effect of the evidence at issue. *Id.* Courts also consider whether counsel intentionally elicited the evidence, whether counsel focused on the evidence during the trial, and whether any cautionary or limiting instructions were given. *Id.* (citations omitted). However, "[b]ecause it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 811 (11th Cir. 2020)(citing *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001).

Here, assuming *arguendo* that the broker's statement was admitted in error, it is the only evidentiary error Defendant cites and that testimony consisted of one sentence. Further, Plaintiff introduced substantial other evidence to support his loss of credit opportunity damages claims, including credit denial letters from Wells

Fargo and LendingClub.  The factual disputes on that issue were not close.

Similarly, Plaintiff's emotional damages evidence was sufficient for the jury to award damages. Plaintiff testified about how the Wells Fargo and LendingClub credit denials affected him and his family.  Even absent the mortgage broker's statements, there was sufficient evidence for the jury to conclude that the Plaintiff suffered damages due to Defendant's inaccurate reporting to Experian and TransUnion.[6]  There is little indication, if any, that the jury was erroneously swayed because of the broker's statements and thus Defendant was not substantially prejudiced by the court's ruling.[7]  See *Maiz v. Virani*, 253 F.3d 641, 668 (11th Cir. 2001) (concluding that evidentiary error did not affect substantial rights in part because verdict could be supported "without considering the challenged testimony").[8]

The Defendant's request for a new trial based on the Court's admission of the mortgage broker's statement is therefore denied.

---

[6] Although the Court did not give a limiting instruction, Defendant did not request one despite a lengthy jury instruction charge conference.

[7] It is noteworthy that later in Plaintiff's direct examination, Plaintiff stated that his mortgage broker stated that Plaintiff needed to get rid of the collection accounts and there was "no way they were going to continue forward with the application if [Plaintiff] ha[d] those accounts."  [DE 155 at 115].  Defendant did not object to this statement as hearsay.

[8] Finally, unlike the cases Defendant cites, here whether Plaintiff was qualified for a mortgage was not the central issue and Plaintiff did not seek to recover damages for his inability to obtain a mortgage loan.

III. <u>Renewed Motion for Judgment As a Matter of Law</u>

    A. Plaintiff Produced Sufficient Evidence at Trial to Support the Jury's Damage Award

        1) Legal Standard

Fed. R. Civ. P. 50 sets forth the standard for a court to grant a motion for "Judgment as a Matter of Law in a Jury Trial." Under Rule 50, a district court can overturn a jury's finding on an issue if the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"[9] Fed. R. Civ. P. 50(a)(1)*; Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130 (11th Cir. 2018) (internal quotation marks omitted). To overturn a jury's finding, a district court must "examine the entire record in the light most favorable to [the party that prevailed at trial] ... and ask whether the evidence nonetheless points 'so overwhelmingly in favor of' [the movant] that the jury's verdict cannot stand." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782 (11th Cir. 2020) (quoting *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995)). The Court's "analysis of a motion for judgment as a matter of law under Rule 50 is the same regardless of whether the analysis 'is undertaken before or after submitting

---

[9] At the close of Plaintiff's evidence, Defendant moved for Judgment as a Matter of Law contending that Plaintiff failed to establish that he lost credit opportunities due to Defendant's actions, and therefore was not entitled to emotional distress damages due to a loss of credit. Specifically, Defendant contended that Plaintiff failed to produce evidence that his LendingClub and Wells Fargo loan applications were denied because of ARR's investigations. The Court took the Motion under advisement, and directed the Parties to brief the issue should the jury return a verdict in Plaintiff's favor. The Court thereafter denied Defendant's Motion and entered final judgment in Plaintiff's favor.

the case to the jury.'" *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). Therefore, "in ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Id*. The Court considers "all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *McGinnis v. Am. Home Mortgage Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). "If there is a substantial conflict in the evidence, such that reasonable and fair-minded persons exercising impartial judgment might reach different conclusions, the district court must deny the motion." *Id*.

> 2) The evidence established that ARR's actions were a substantial factor in the Wells Fargo's and LendingClub's denial of credit

In its Renewed Motion for Judgment as a Matter of Law, Defendant contends that notwithstanding the verdict, the evidence at trial did not support the actual jury's damages award because Defendant's actions were not a "substantial factor" in Plaintiff's credit denials. Plaintiff argues that Defendant conflates the "substantial factor" test with the "but for" test, and asserts that there is clear evidence that Defendant's inaccurate reporting resulted in the Plaintiff's credit denials.[10]

---

[10] At the close of evidence, the Parties agreed to submit the following instruction regarding damages to the jury:

> In order to recover damages, plaintiff need only show by the greater weight of the evidence that the Defendant's failure to comply with the Fair Credit Reporting Act was a substantial factor in causing his damages. The Plaintiff need not prove that the Defendant's failure to comply was the sole cause of his damage.

Defendant responds that under either test, Plaintiff fails to meet his burden.  For the following reasons, Defendant's argument fails.

At trial, Ramones testified that in June of 2018, he was advised by a mortgage broker that 19 negative accounts appeared on his credit report [DE 155 at 41-42].  Plaintiff then ran his credit report and elected to dispute all of the charges with Experian and TransUnion.  Plaintiff lodged his disputes including writing a message in the on-line box explaining that the bills were not his.  No other negative accounts appeared on his credit report at that time. [DE 155 at 42].

In 2019, Plaintiff submitted a Wells Fargo application to consolidate his credit.  A June 29, 2019, Wells Fargo letter denying Plaintiff's credit application stated:

> We are unable to offer you credit for these reasons related to your credit history or other factors:
>
> - Legal or other action taken against you or your accounts (For example, collection, tax lien, or charge off)
> - Not enough income or assets at Wells Fargo (If there's not enough qualifying income for the request amount, we look to your Wells Fargo accounts as an additional factor)
> - Derogatory public record or collection filed
> - Proportion of balances to credit limits on revolving account too high.

[DE 150-1 at 245]. The letter further identified the following key factors that negatively affected Plaintiff's credit score, as follows:

---

[DE 145 at 10].  Consistent with FCRA law, the jury instruction informed the jury that the Plaintiff need not demonstrate that "but for" the Defendant's FCRA violation, he would not have suffered damages, but only that the violaion was a substantial factor in those damages.   To the extent the Defendant contends that another standard should have been used, the Court rejects that contention.

- Derogatory public record or collection filed
- Proportion of balance to credit limits on revolving accounts too high
- Length of credit history too short
- Proportion of loan balances to loan amount is too high
- Too many inquires in last 12 months

[DE 150-1 at 247]. The denial letter also advised Ramones that he could obtain a free credit report from Experian. [DE 150-1 at 245-247.]

As for the LendingClub denial, Plaintiff testified that in August and November 2019, he applied for a LendingClub $10,000.00 personal loan. He received letters dated August 9, 2019 and November 3, 2019 denying each application which stated, "…we are sorry that we cannot approve your loan request for these reasons:

- Your credit score was below the required minimum. The credit bureau provided the following reasons that resulted in your credit score being less than the minimum credit score requirements: Derogatory public record or collection filed, Proportion of balances to credit limits is too high on bank revolving or other revolving accounts, Length of time accounts have been established, Length of time since derogatory public record or collection is too short.

- The amount of credit you requested is too high relative to your income.

- The credit available on your existing accounts is low."

[DE 150-1 at 249, 250]. The denial letters also stated that information provided by TransUnion was used to evaluate Ramones' credit. [DE 150-1 at 249, 250].

Defendant concedes that the Wells Fargo letter references derogatory information or collection accounts as part of the basis for Plaintiff's credit denial, but argues that because there were five additional independent listed reasons for denying the application, Plaintiff cannot establish that Defendant's actions were a

substantial factor in Plaintiff's credit denial. [DE 159 at 9].  Defendant makes a

similar argument for the LendingClub denial. [DE 159 at 9].  Defendant further

argues that the October 29, 2019 Experian Credit Report contradicts Plaintiff's

statement that his credit was "otherwise perfect."[11]

In *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365-66 (N.D. Ga.

2005), aff'd, 164 F. App'x 914 (11th Cir. 2006), an FRCA case, the trial court

observed that while a plaintiff must prove that the inaccurate entry was a

"substantial factor in bringing about" the denial of credit, a plaintiff need not

eliminate the possibility that correct adverse entries or any other factors also

entered into the decision to deny credit.  *Id.* (citing *Cahlin v. General Motors

Acceptance Corp.*, 936 F. 2d 1151, 1161 (11th Cir. 1991)). The court reasoned:

> [f]orcing a plaintiff affirmatively to rule out other
> explanations for the credit denial ignores the fact that
> decisions to deny credit will frequently have more than
> one cause. For example, in some instances the inaccurate
> entry and another factor may each, considered separately,
> be insufficient to have caused the denial of credit but
> when taken together are sufficient. Each may then be
> considered a substantial factor in bringing about the
> denial of credit and therefore a cause of plaintiff's injury.

*Id.* (citing Keeton et al., Prosser and Keeton on Torts § 41, at 266–68 (5th ed.1984).

The Wells Fargo credit denial letter makes clear that the reasons for the

denial included the fact that legal action, *e.g.,* collection, tax lien or charge off, had

---

[11] Defendant contends that the credit report showed that more than 70% of
Plaintiff's reported debt originated from accounts other than those reported by ARR,
which only accounted for $8,258.00 (29%) of Plaintiff's total debt of $28,063.00. [DE
172 at 3].

been taken against Plaintiff, and that he had derogatory public record or collection filed.  Similarly, the LendingClub denial letter referenced "Derogatory public record or collection filed,"  and stated that the "Length of time since derogatory public rcord or collection is too short."  Given that there is no evidence that other collection actions appeared on Plaintiff's credit reports at that time, and given that the denial letters were issued within 6 months from when Defendant incorrectly reported 19 delinquent accounts, there was sufficient evidence in the record for the jury to conclude that the Defendant's actions were a substantial factor in the Wells Fargo and LendingClub's credit denials. See *Sampson v. Equifax Information Services, LLC*, No. CV204-187, 2005 WL 2095092, at *4, nt. 3 (S.D. Ga. Aug. 29, 2005) (concluding that a plaintiff's "sworn statement that she was denied credit, and has suffered emotional distress, as a result" were sufficient to meet her burden even though plaintiff's "credit file contain[ed] numerous derogatory entries, in addition to the disputed accounts, including multiple charged off accounts, collections accounts and a repossession").

Thus this case is distinguishable from those cases where a defendant came forward with evidence affirmatively showing that the lender did not consider the inaccurate report, which outweighed the circumstantial evidence from the plaintiff, see *Cahlin v. General Motors Acceptance Corp.*, 936 F. 2d 1151 (11th Cir. 1991); or those cases where the plaintiff came forward with no evidence that a defendant's inaccurate reporting was related to the credit denial, see *Rumbough v. Experian Information Solutions, Inc.*, 626 Fed.Appx. 224, 226 (11th Cir. 2015); or, those cases

where the reported inaccuracy was far outweighed by other bad debt and actually benefitted the plaintiff. See *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365-66 (N.D. Ga. 2005).

Defendant also raises a number of additional non-persuasive arguments on this issue. First, Defendant argues that Plaintiff failed to meet his "substantial factor" burden because Plaintiff presented no expert testimony as to the weight of each factor referenced in the denial. Defendant has not cited and this Court has not found any case to support Defendant's contention that Plaintiff needed to introduce expert testimony to prove that ARR's inaccurate reporting weighed more heavily in credit denial than the other reasons listed in the credit denial letter.

Similarly, Defendant asserts that Plaintiff failed to seek additional information from LendingClub as to the basis for the credit denial. It also argues in a footnote that the Plaintiff failed to meet the "substantial factor" burden because he failed to demonstrate the weight or role of each of the numerous additional factors played in the credit denials and any substantial role of ARR reporting. [DE 159 at 11].[12]

The FRCA imposes no requirement that a plaintiff contact a lender for additional information about the basis for a denial before pursuing a private action against a non-compliant furnisher, particularly where the denial letter sets forth the basis for the lender's credit denial. Further, Plaintiff need not introduce lender

---

[12] Defendant also contends that Plaintiff failed to contact Wells Fargo to obtain additional information about his denial [DE 159 at 4].

testimony to explain which of the reasons weighed most heavily in it decision to deny Plaintiff credit, particularly when, the denial letters entered both state that one of the reasons—the first reason listed—for the denial was because of actions taken against him on his accounts, including collections, charge offs, etc., and/or derogatory public record or collection filed.   As discussed above, Plaintiff's burden on this issue is not to show that Defendant's inaccurate reporting was the only reason for the denial but only a substantial factor.   Ramones has met that burden here.

2) Plaintiff's testimony established emotional damages.

The FCRA creates a private right of action against furnisher's of information for a violation of their duties under that statute. *Chipka v. Bank of Am.*, 355 Fed.Appx. 380, 382 (11th Cir. 2009) (per curiam).   The statute also provides for a potential additional damage award should there be a determination that the violation was willful rather than merely negligent. 15 U.S.C. § 1681n(a). Actual damages may include mental distress, even in the absence of out-of-pocket expenses or physical injury. *Levine v. World Fin. Network Nat'l Bank (Levine I)*, 437 F.3d 1118, 1124–25 (11th Cir. 2006).[13]   Defendant contends that the jury verdict cannot

---

[13] A plaintiff's FCRA damages are not limited to the denial of credit but may also include damages for any negligent violation of FCRA, including damages for humiliation, mental distress or injury to reputation and creditworthiness," as the only damage is often one of the harms suffered by consumers as a result of FCRA violations, see *Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1365-66 (N.D. Ga. 2005), aff'd, 164 F. App'x 914 (11th Cir. 2006).  See also *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1365 (N.D. Ga. 2015); see also *Foster*, 2019 WL 3490463 at *13 (collecting cases).

stand because Plaintiff offered only self-serving and conclusory testimony to support

his FCRA damages claim.  Defendant states "Plaintiff testified that he had frequent

thoughts about ARR's investigations, suffered stress, gained weight and became

less talkative but offered no corroborating evidence to support these conclusory

statements.  He did not provide evidence that he sought medical treatment or offer

evidence from others to substantiate his claims." [DE 159 at 12].

Defendant's argument fails.  First, prior to trial, Judge Scola ruled that

Plaintiff need not provide expert testimony or "abundant" corroborating evidence of

emotional distress. [DE 135 at 8]. Rather, Judge Scola cited the Eleventh Circuit's

decision in *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288 (11th Cir. 2019)

to hold that testimony alone can be sufficient to claim emotional-distress damages

under the FCRA and that an expert is not required.[14] [DE 135 at 8-9].

---

[14] As Judge Scola explained:

In *Marchisio*, the plaintiff sought to recover, in part, emotional-distress damages
that resulted from the defendant's inaccurate reporting of the plaintiff's debt. *Id.* at
1295–96. This had been the second time that the defendant inaccurately reported
the plaintiff's debt—the first instance resulted in an earlier suit and settlement. Id.
at 1295. The Eleventh Circuit reversed a grant of summary judgment in favor of the
defendant, holding that the plaintiff had adequately established emotional distress
as it related to the first inaccurate reporting and remanding to the district court to
determine whether the plaintiff also established an "exacerbat[ion]" of his emotional
distress following the second inaccurate reporting. *Id.* at 1304. In particular, the
court recognized that the plaintiff had established his emotional distress as to the
first incident based only on the plaintiff's testimony. *Id.* While not as explicit as
some may like, *Marchisio* "necessarily concluded that [a plaintiff's testimony] of
emotional distress was sufficient[.]" *Otwell v. Home Point Fin. Corp.*, No. 4:19-cv-
01120-ACA, 2021 WL 2587964, at *3 (N.D. Ala. Apr. 23, 2021).

Defendant concedes in its Reply that the Court previously ruled that Plaintiff's testimony alone is sufficient to support a claim for emotional distress damages. Defendant nonetheless argues that because ARR's actions were not a substantial factor in the credit denials which were the basis for Plaintiff's emotional damages, Plaintiff failed to establish the causal connection between Defendant's actions and Plaintiff's emotional harm.

As the Court previously determined that Plaintiff met his burden to establish that ARR's actions were a substantial factor in Wells Fargo and LendingClub's credit denials, Plaintiff's testimony regarding how he felt about those denials was sufficient to establish his actual damages.  At trial, Ramones testified that he was "super upset" when he was repeatedly unable to have the disputed bills removed from his credit report [DE 155 at 80]. He stated that before the inaccurate reporting, he was happy and talkative. [DE 155 at 82], but that after the continued verification of the inaccurate accounts, he became very quiet with his family, [DE 155 at 83], and his relationship with this wife suffered.  [DE 155 at 83-84].  Plaintiff testified that he began having a lot of anxiey and gained fifty pounds. [DE 155 at 84]. He stated that he was "always thinking about the issue" on a "daily basis" including at night and while he was working. [DE 155 at 82-83]. He testified that he didn't go out anymore because he was so stressed out. [DE 155 at 84].   When the accounts still remained on his credit reports in 2019, Plaintiff stated that he was again "shocked" and felt like the issue was never going to end. [DE 155 at 90-91].

Given this undisputed testimony, Plaintiff satisfied his burden of demonstrating actual emotional distress damages.

B.  *The Jury's Award of Punitive Damags Should Be Modified*

1. Punitive damages the FCRA

The FCRA provides for "such amount of punitive damages as the court may allow" for "willful" FCRA violations. 15 U.S.C. § 1681n(a)(2).  In this case, the jury found that Defendant's FCRA violation was willful. [DE 146 at 1].  As such, Plaintif was entitled to an award of punitive damages.

2. The punitive damages award ratio to actual damages is higher than the Eleventh Circuit standard

Punitive damages "are aimed at deterrence and retribution" to deter the defendant and others from this type of conduct and to punish the defendant for his particular wrongful conduct. *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 746 (11th Cir. 2020) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).  A punitive damages award violates due process when it is "grossly excessive" in relation to the State's interest in punishment and deterrence. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, (1996). Courts consider three guideposts when determining whether an award violates due process: (1) the degree of reprehensibility of the defendant's misconduct; (2) the ratio between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Williams*, 947 F.3d at 748 (citing *Gore*, 517 U.S. at 574–75). The Court examines each of the "*Gore*" guideposts, in turn.

i) Defendant's reprehensibility

In assessing whether a jury's punitive damages award is excessive, the reprehensibility of the defendant's conduct is the "dominant consideration" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1288 (11th Cir. 2018)(citing *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1283 (11th Cir. 2008)). To determine reprehensibility, courts consider: (1) whether the harm caused was physical or economic; (2) whether the conduct evinced an indifference to or reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions rather than an isolated event; and (5) whether the conduct involved intentional malice, trickery, or deceit rather than mere accident. *Id.* citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, (2003). Although the absence of all five factors render a punitive damages award suspect, all five factors need not be present to sustain such an award. *Williams*, 947 F. 3d, at 750.

As to the first factor, Defendant's conduct caused Plaintiff physical and emotional harm in addition to economic harm. As discussed above, Plaintiff testified that when his credit requests were denied due to the Defendant's inaccurate reporting, his damages were more than economic damages, and included damages to his relationship with his wife, and physical damages in the form of anxiety, shock and weight gain.

The second factor is whether Defendant's conduct evinced an indifference to or reckless disregard of the health or safety of others. See *Williams*, 947 F. 3d, at 752 (distinguishing type harm in second *State Farm* factor from type of harm to a plaintiff under the first and third factors). While there is no doubt that Defendant's conduct caused emotional harm to Plaintiff, the trial evidence did not establish that failure to correct inaccurate credit information, as a general matter, presented a risk to the health or safety of others, or that Defendant was well aware of the emotional stress being wreaked on Plaintiff.  See, *Id.* citing  *McGinnis v. Am. Home Mort. Servicing, Inc.*, 240 F.Supp.3d 1337, 1352 (M.D. Ga. 2017).  Thus, this factor weighs slightly in Defendant's favor.

Third, Defendant knew that Ramones was financially vulnerable, given that Defendant reported what it believed to be 19 delinquent debts related to his medical treatment.  In addition, Plaintiff continually lodged more than 30 disputes about the debts, evidencing concerns about his credit rating and his ability to secure credit.

Fourth, Defendant's conduct involved repeated actions rather than an isolated event. Indeed, Plaintiff Ramones disputed the deliquincies no fewer than 30 times. However, not once did the Defendant's investigators review the consumer message field when processing his dispute, and never contacted Plaintiff.  Instead, Defendant continually reported the delinquency to TransUnion and Experian as verified despite the patent facts that Plaintiff: had a different name than his father,

had a different social security number, different birthdate, and was more than forty years younger than his father.[15]

Fifth, Defendant's conduct went well beyond a calculation error. Defendant's employees' testimony establish that Defendant did not train its employees to conduct a reasonable investigation of disputes raised by people reporting errors in delinquencies.  Specifically, Ms. Lesane testified that no one taught her the requirements under the FCRA.  More importantly, Defendant's policies did not permit her to delete an account even if the last name varied from the person owing the debt.  At least two employees testified that they did not review the consumer messages, even though those fields captured the explanation of the discrepancies.[16] All of the employees testified about the high number of discrepancies they were expected to process everyday and estimated that the average dispute took them about one to two minutes to process.  In addition, Ms. Macrone, who was one of three people who processed disputes, testified that she did not recall receiving any training on how to process disputes, and did not know if ARR had any written policies and procedures or written guidance on how to process disputes.

---

[15]Defendant's employees testified that ARR did not request or have Plaintiff's birthdate. However, the Defendant's failure to use consumer's date of birth as a method for verifying the accuracy of the debts, only reinforces the conclusion that the Defendant was indifferent to the need to ensure the accuracy of information reported to the credit agengies.

[16]  ARR receives consumer's credit disputes made to credit reporting agencies through the "e-OSCAR" system.  That system includes a field for a disputing consumer to write messages regarding the dispute. ARR's internal system, "CRS", stores relevant information pertaining to the consumer's debt and/or delinquency.

Finally, Ms. Davis, Ms. Macrone and Ms. Lesane all testified that even when they observed identification discrepancies in the reported delinquencies as compared to the consumer's identification, the Defendant's standard operating procedure was to still report the delinquency as accurate.

In sum, Defendant's employees' collective testimony supported the jury's determination that the Defendant's conduct was highly reprehensible as the Defendant was, at best, callous, in the manner that it processed customer's disputes.  Thus, four of the five factors set forth in *State Farm* support the conclusion that Defendant's conduct was highly reprehensible.

ii) Ratio of punitive to compensatory damage award

Turning to the second *Gore* guidepost, courts consider whether the ratio of punitive damages to compensatory damages awarded by the jury is unconstitutionally excessive. The Supreme Court has approved of "single-digit multipliers" as "more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with [higher] ratios." *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513.

In *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 763 (11th Cir. 2020), the Eleventh Circuit concluded that a $3.3 million punitive damages award in an FCRA case, reflecting a 13:1 ratio of the $250,000 compensatory award, violated due process.  The case involved two credit background check reports issued by a consumer reporting agency which mistakenly identified the plaintiff as having a criminal record for the sale of cocaine. *Id*. at 741.

The reviewing Court remanded the case to the district court with instructions to reduce the award to $1 million, representing a 4:1 ratio. *Id*. at 768. In so doing, the Court observed that although the defendant's practices in that case were "markedly lackluster," the defendant quickly corrected both of its reports when plaintiff informed the defendant of its error. *Id*. at 765.[17] The Court additionally noted that the plaintiff failed to provide context to demonstrate the likelihood that defendant's error occurred in a high frequency, which weakened the case for an extremely high punitive damages award. *Id*. at 765.

In contast, in *McGinnis v. Am. Home Mort. Servicing, Inc.*, 901, F. 3d 1282 (11th Cir. 2018), the reviewing Court upheld a $506,000 compensatory damages award and $3 million award in punitive damages. This represented a 5.9:1 ratio, where the defendant's conduct was deemed to be highly reprehensible.

In this case, the jury awarded $80,000 in actual damages and $700,000 in punitive damages, an 8.75 to 1 ratio. [DE 159 at 3]. Thus, the jury's award does not *per se* violate due process. To be sure, the high punitive damages award likely reflects the jury's assessment of Defendant's callous behavior throughout the eighteen months of processing Plaintiff's approximately thirty disputes, and Defendant's employees' testimony which confirmed that such treatment would likely repeatedly occur with countless other consumers. In addition, although Defendant was not required to have a corporate representative attend trial, the

---

[17] The plaintiff in *Williams* filed a dispute with the defendant on March 1, 2012 and the defendant issues a revised background report which deleted the incorrect information on March 12, 2012. *Id*. at 741.

absence of an ARR representative at the four-day trial, undoubtedly reinforced the jury's perception that ARR lacked any genuine concern about how its policies and procedures for handling consumer disputes impacted Plaintiff Ramones. Finally, given the size of ARR, and the number of disputes handled annually, it is not surprising that the jury deemed a high punitive damages award necessary to send the Defendant a deterrence message.

However, based on the Eleventh Circuit's decision in *Williams*, a case that carefully examined punitive damage cases and set forth a punitive damage award framework, the undersigned concludes that, under the facts of this case, the punitive damage ratio of 8.75 to 1, should be tempered.  After a thorough review of the trial evidence, the undersigned concludes that Defendant ARR's conduct is much closer to the defendant's conduct in *McGinnis* yet was far more reprehensible than the defendant's conduct in *Williams*.  Thus, a 5.9:1 punitive damages to actual damages ratio is more appropriate under the law, and is the highest award of punitive damages that satisfies due process limits, while achieving the goals of deterring Defendant's behavior and achieving retribution.

> iii) Similar punitive damage amounts have been awarded in comparable cases

Similarly, as discussed above, in the *Williams* case which arose under the FRCA, the Eleventh Circuit reduced the punitive damages award from $3.3 million to $1 million.  And, although the Eleventh Circuit has upheld high single digit compensatory damages to punitive damages where defendant's conduct has been exceedingly reprehensible, those cases generally did not arise under the FCRA.  See

*Goldsmith v. Bagby Elevator Company, Inc.*, 513 F.3d 1261, 1283 (11th Cir. 2008) (affirming 9.2:1 ratio of damages in a reprehensible discrimination case). Cases similar to Plaintiff's case have yielded punitive damages awards in the 4 to 6:1 ratio range. As such, reducing the punitive damages award in this case, brings this case into the range of awards in similar cases. Plaintiff's counsel's closing argument asked for punitive damage award in the range of $350,000 to $450,000. Thus, $475,000, representing a ratio of 5.9:1 of punitive to actual damages, is consistent with Eleventh Circuit law, honors the jury's assessment and Plaintiff's counsel's request.[18]

IV. CONCLUSION

Accordingly, it is

**ORDERED** that Defendant AR Resources, Inc.'s Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial [DE 159] is **DENIED**, in part, and **GRANTED**, in part, as follows:

1. To the extent that the Motion seeks judgment as a matter of law and/or a new trial, those requests are denied, and the jury's award of $80,000 in actual damages remains.

2. To the extent that the Defendant seeks a reduction in the punitive damages award, that request is partially granted. The jury's punitive damages

---

[18] Because the jury's actual damages award was more than Plaintiff's Counsel's request, the 5.9:1 ratio of punitive damages to actual damages yields a higher dollar amount than requested.

verdict is reduced from $700,000 to $475,000. The Court will enter an Amended

Final Judgment by way of separate order.

**DONE AND ORDERED** in Miami, Florida, this 8th day of April, 2022.

PATRICIA A. SEITZ
UNITED STATES SENIOR DISTRICT JUDGE